UNITED STATES of America,
Plaintiff–Appellee,

v.

Ronald C. HOLLIFIELD,
Defendant–Appellant.

No. 87–5245
Non–Argument Calendar.

United States Court of Appeals,
Eleventh Circuit.

April 19, 1989.

Michael J. Doddo, Ft. Lauderdale, Fla., for defendant-appellant.

Dexter W. Lehtinen, U.S. Atty., Miami, Fla., Theresa M.B. Van Vliet, Asst. U.S. Atty., Ft. Lauderdale, Fla., for plaintiff-appellee.

Before HILL, HATCHETT and CLARK, Circuit Judges.

PER CURIAM:

Appellant Hollifield was convicted by a jury on all counts of a consolidated indictment charging two conspiracies to make false statements to the Federal Aviation Administration (FAA) and three substantive counts of making false statements to the FAA. Hollifield appeals on the grounds that there was insufficient evidence to support the convictions.

## I. FACTS

In September 1985, appellant Hollifield was employed by the FAA, as an aviation safety inspector. Appellant's duties as an FAA inspector included certifying aircraft pilots by administering flight tests and by issuing pilot's ratings and licenses. The final step in receiving a particular pilot rating is a check flight administered by an FAA inspector after the applicant has completed the prerequisite ground and flight training. The check flight is administered to ensure that an applicant is qualified to receive the rating sought. After the flight test, an applicant fills out FAA form 8710–1, providing the date of the flight test and the type and identification number of the aircraft used to conduct the flight test. The remaining portion of the application is completed by the flight examiner certifying that the applicant has passed all the tests necessary to obtain the new rating. The examiner sends the form to the FAA offices in Oklahoma and issues the applicant a temporary airman's certificate, adding to it the rating for which the applicant has just qualified. The inspector certifies, by his signature on the temporary airman's certificate, that he has administered the check flight and that the applicant is qualified to receive the rating.

Appellant Hollifield met Craig Wilson in the late spring of 1985. As of September 28, 1985, Wilson had already obtained the level of airline transport pilot, but sought to obtain two additional ratings which would qualify him to pilot an Israeli aircraft (IA) 1121 jet and a helicopter. In order to obtain these additional ratings, he was required to take a check flight. Hollifield met Russell Posner through Wilson in August or September of 1985. At that time, Posner had already received ratings as a private pilot for a single engine airplane and as a commercial pilot for a multiengine airplane. Posner sought an instrument rating, which would qualify him to pilot an aircraft solely on instruments in instances of poor visibility. In order to obtain the instrument rating, Posner was required to take a check flight.

Posner was scheduled to take his required check flight with appellant on September 17, 1985. Posner had completed the prerequisite ground and flight training and had submitted to appellant his form 8710–1 for his instrument rating. No check flight was conducted that day due to bad weather, but the test was rescheduled for the following week. On September 20 or 21, 1985, Posner received a telephone call from Wilson, who told him that appellant needed help moving. Appellant met with Wilson and Posner, and after Posner located an apartment for appellant, Wilson and Posner helped appellant move. When they finished, appellant handed Posner a temporary airman's certificate that granted Posner an instrument rating. The certificate was dated September 15, 1985. Posner testified that appellant never administered a check flight to Posner in connection with this instrument rating.

The next week, Posner met Wilson and appellant at Wilson's home. Posner testi-

fied that he and Wilson were present when appellant typed out a temporary airman's certificate for Wilson for an IA 1121 rating. According to Posner, appellant and Wilson discussed what aircraft identification number would be used on the certificate to represent the plane used for the supposed check flight. Posner testified that appellant stated that they would "use the numbers of the jet that [appellant] used to fly in Texas or Arkansas—Oklahoma." The temporary airman's certificate, dated September 28, 1985 and issued by appellant to Wilson granting the IA 1121 jet rating, indicated that the requisite check flight had been given on a jet bearing registration or "N" number N500GJ. FAA records establish that "N" number N500GJ had not been assigned to any aircraft in the United States since its removal from an Aerocommander, Model 1121, on July 1, 1983. On that date, this airplane was reregistered as N124JB. Testimony established that Charles Kole was the sole pilot of jet N124JB in September, 1985. Kole testified that the only trips made in that jet in September, 1985 were a round trip from Austin, Texas to San Diego and a round trip from Austin to Houston, Texas. Except for those two trips, the jet never left its hanger in Austin during September. This fact was verified by the jet's flight hour meter which runs only while the plane is flying. According to this meter, no additional hours were logged on this jet's engines during September, 1985.

Appellant also issued a temporary airman's certificate to Wilson granting a helicopter rating. Appellant certified that he had administered a check flight to Wilson for the helicopter rating on September 27, 1985 on board a helicopter bearing registration number N2288C. George Huffman was the sole pilot for helicopter number N2288C from July 1984 through November 4, 1985. Huffman testified that on September 26, 1985 he flew the helicopter to Orlando, Florida, returning to Fort Lauderdale the next day. No one else used the helicopter while in Orlando. The next time Huffman flew the helicopter was on October 2, 1985. Between September 27 and October 2, 1985, there were no additional

hours recorded on the helicopter's hour meter.

FAA employee time and attendance records established that appellant was on traumatic sick leave from September 20 through October 12, 1985, which encompasses the dates of the alleged Wilson check flights. Traumatic injury leave is taken when an employee is physically unable to perform his regular duties. Moreover, appellant executed an affidavit on July 24, 1986 in which he admitted that he had not given the check flights to Posner and Wilson which are the subject of the indictments. This affidavit, which was admitted as Government Exhibit 15, was in contradiction to appellant's testimony that he had given the requisite check flights to Posner for the instrument rating and to Wilson for the IA 1121 jet rating and helicopter rating. Appellant maintains that the registration numbers placed on the 8710–1 forms were errors made by Wilson. In addition, appellant introduced an affidavit signed by Wilson in which Wilson stated that appellant had given him the requisite check flights.

A federal grand jury returned two indictments charging appellant in separate conspiracies with Posner and Wilson to give the FAA false information regarding the flight tests and a total of three substantive charges of making false statements to the FAA. The "Posner" and "Wilson" indictments were consolidated for trial before the district court. A jury found appellant guilty on all counts of the consolidated cases. This appeal ensued. Appellant's brief alleges error only as to the "Wilson" indictment. Therefore, appellee's motion to dismiss the appeal regarding the "Posner" indictment was granted by this court.

## II. DISCUSSION

On appeal, appellant argues that there was insufficient evidence to convict him of the conspiracy charge and the substantive offenses set forth in the Wilson indictment. That indictment specifically charged appellant with conspiring with Wilson to give the FAA false information about the two flight tests aboard aircraft numbered

N500GJ and N2288C and with two substantive counts of submitting false statements to the FAA concerning the flights aboard these two aircraft.

In judging the sufficiency of the evidence, adduced at trial, the appropriate standard of review is whether the evidence, when considered in the light most favorable to the government, proved the appellant's guilt beyond a reasonable doubt. *United States v. Sanchez*, 722 F.2d 1501, 1505 (11th Cir.), *cert. denied*, 467 U.S. 1208, 104 S.Ct. 2396, 81 L.Ed.2d 353 (1984); *United States v. Bell*, 678 F.2d 547, 549 (5th Cir. Unit B 1982) (en banc), *aff'd on other grounds*, 462 U.S. 356, 103 S.Ct. 2398, 76 L.Ed.2d 638 (1983). The evidence may be sufficient even though it is not wholly inconsistent with every conclusion except that of guilt; the jury is free to choose among reasonable constructions of the evidence. *United States v. Zielie*, 734 F.2d 1447, 1458 (11th Cir.1984), *cert. denied*, 469 U.S. 1189, 105 S.Ct. 957, 83 L.Ed. 2d 964 (1985) (quoting *United States v. Bell*, 678 F.2d at 549). This court is obliged to accept all credibility inferences in favor of the jury's verdict. *Sanchez*, 722 F.2d at 1505; *United States v. Gonzalez*, 719 F.2d 1516, 1521–22 (11th Cir.1983), *cert. denied*, 465 U.S. 1037, 104 S.Ct. 1312, 79 L.Ed.2d 710 (1984). Moreover, the jury's resolution of factual disputes should not be disturbed absent compelling circumstances. *See United States v. Zweig*, 562 F.2d 962, 963 (5th Cir.1977). From the facts stated above, we find sufficient evidence to support Hollifield's convictions on all counts of the Wilson indictment.

The elements of a conspiracy under 18 U.S.C. § 371 are (1) an agreement between two or more persons, (2) an unlawful purpose and (3) an overt act committed by one of the co-conspirators in furtherance of the conspiracy. *United States v. Corley*, 824 F.2d 931, 936 (11th Cir.1987) (citing *United States v. Perkins*, 748 F.2d 1519, 1527 (11th Cir.1984)). In order to affirm appellant's conspiracy conviction, there must be sufficient evidence that a conspiracy existed, that appellant knew of it and that he intended to associate himself with the objectives of the conspiracy. *United States v. Corley*, 824 F.2d at 936. Direct evidence of a conspiracy between appellant and Wilson was presented to the jury. Posner testified that appellant prepared Wilson's temporary airman's certificate for the IA 1121 jet rating at Wilson's home in his and Wilson's presence. Posner further testified as to the discussions between appellant and Wilson regarding what aircraft registration number they would use as the check flight aircraft on the falsified form. Moreover, appellant admitted in an affidavit, voluntarily signed, that he did not give Wilson the check flights.

These facts provide the jury with sufficient evidence to find an agreement between appellant and Wilson to falsify information for submission to the FAA. These facts also provide sufficient evidence of the overt act committed in furtherance of the conspiracy, appellant's signing of a temporary airman's certificate though no check flight had been given to Wilson. The jury chose to disbelieve appellant's testimony and Wilson's affidavit with respect to the check flights. From the facts presented, a rational jury could have concluded beyond a reasonable doubt that appellant conspired with Wilson to make false statements to the FAA.

With respect to the substantive counts of making false statements, there was also sufficient evidence to support the convictions. The false information allegedly given to the FAA was appellant's certification that Wilson met the necessary qualifications and passed the flight tests for his two temporary ratings. The jury had before it appellant's testimony that he gave the test flights, appellant's affidavit that he did not give the test flights, Wilson's affidavit that he was given a test flight, Posner's testimony about his own failure to be flight tested, and the applications and temporary airman's certificates that indicate test flights were given in September 1985 on two aircraft numbered N500GJ and N2288C. There was compelling evidence that the test flights in question could not have been given aboard the aircraft identified on the applications.

The jury heard the evidence and chose to disbelieve Hollifield in making their credibility determinations. There are no compelling circumstances present in this case which warrant disturbing the jury's credibility choices. A reasonable jury could have disbelieved appellant's testimony, *United States v. Bennett,* 848 F.2d 1134, 1139 (11th Cir.1988), particularly in light of the other evidence presented. A rational jury could have concluded beyond a reasonable doubt that appellant made false statements to the FAA.

### III.  CONCLUSION

For the reasons stated above, the convictions are AFFIRMED.